Case No. 16-1309NL Volkswagen Group of America, Inc. Petitioner v. National Labor Relations Board Mr. Carter for the petitioner, Mr. Heller for the respondent, and Mr. Ginsberg for the intervener Mr. Heller for the petitioner, Mr. Ginsberg for the respondent, and Mr. Ginsberg for the intervener Mr. Heller for the petitioner, Mr. Ginsberg for the respondent, and Mr. Ginsberg for the intervener Good morning Good morning, Your Honor Are you ready to proceed? Yes Thank you very much May it please the Court, my name is Arthur Carter, I'm here on behalf of Volkswagen, the petitioner in this case I would like to reserve three minutes of my time for rebuttal purposes This case involves a certification test arising out of the NLRB's unprecedented determination that maintenance employees from three shops at Volkswagen's Chattanooga, Tennessee facility had a community of interest amongst themselves sufficient to be included in one group for purposes of collective bargaining The Board and the Regional Director, in their determinations, lumped together the body weld maintenance shop employees the paint maintenance shop employees and the assembly maintenance shop employees to construct its own version of a department or shop where one does not exist I'd like to call Your Honor's attention to Joint Appendix 422 because it just graphically indicates physically the situation at the Volkswagen facility You have three separate shops that in effect are three verticals in that operation So is that the part of this that you say is unprecedented? Because there's certainly precedent for maintenance employees to be separate bargaining in the unit from production employees Judge Wilkins, that's exactly correct What is unprecedented is taking employees from three different maintenance groups or maintenance shops or maintenance departments and combining them in one There's numerous authorities cited in the parties' respective briefs that indicate that it's very common for the NLRB to find maintenance units appropriate But the common feature of all of those cases is a centralized maintenance operation in a particular plant under common supervision as opposed to separate maintenance departments I'm sorry, but in the record, doesn't the record support the argument or the inference that the maintenance shops are separate because of really kind of the functions that occurs within each of those shops but not necessarily separate in the sense of like there's some sort of a separate management structure or benefits or the way that they operate, et cetera, right? Actually, Your Honor, what the record shows about the maintenance departments within each of the shops and there are three shops, is that those employees have separate supervision They're separately trained to work in those respective shops They only work on the equipment and technology in those shops They do not interchange between those shops And there's no functional integration between those shops And so what the record shows is effectively three different maintenance departments in the facility rather than one overall maintenance department So if there was just a body well maintenance bargaining unit, that would be appropriate? Yes, that's correct, Your Honor, it would be appropriate The problem here is that the board lumped together three different shops and the maintenance employees in those three different shops when they did not have a community of interest And they're lumping together of the employees in those three different shops with not only arbitrary, but it's not supported by substantial evidence Now, the regional director confronted the Bergdorf-Goodman case in those arguments and found that notwithstanding that there were three different shops there was enough of a community of interest there First off, was there some sort of legal error in that analysis that you want to point us to? Yes, Your Honor, this court has said when evaluating community of interest issues and Blue Man Vegas is a good example, Tito's Construction is a good example Sundoor is a good example that when the board evaluates a community of interest question it is to look and consider all the circumstances and apply the factors that are under all those circumstances to the grouping of employees and do a comparison of the employees that are in the petition for a group to see if they have a community of interest The flaw in what the regional director did here was essentially she did not compare the maintenance employees with one another Rather, she compared them with the production employees And that's evident from the face of the regional director's decision when she talked about the common supervision lacking because they didn't share supervision with the production employees or the common wages between the maintenance employees because it was different than the production employees But when you net it out, the only thing the regional director came up with is they have a common job title, they're called maintenance employees and they have a common function, they repair machinery But there was no consideration of all the other things that factor into the determination of an appropriate community of interest It seems like you read a different decision than I did because I thought that the regional director's decision talked about how the maintenance employees, regardless of what shop they were in they had the same sort of schedule they had the same sort of rules about when they could take vacation or not training, etc. So I'm not sure I follow how you're saying that there was kind of like no comparison of the maintenance employees across the shops Alright, so you have three shops and you have separate supervision in each of the shops The schedules in each of the shops vary Two of the shops have the same schedule One of the shops had a different schedule It was not centrally set forth The maintenance employees in each of the shops as part and parcel being separately supervised had their own PTO, paid time off policies their own vacation policies And those were not decided on a common or overall basis Those were decided on a shop-only basis And as to the question that you've raised about essentially was this in the decision If you look at the regional director's determination under the heading Application of Board Law to the Facts of this Case what the regional director notes is that in concluding that the petition for employees are readily identifiable as a group I note they share a unique function She then goes on to say Moreover, the petition for employees share a community of interest under the Board's traditional criteria But note what is said and what is not said What page are you on? I'm sorry, Your Honor I'm looking at the actual That's fine That's fine In the joint appendix, if I can If you'll just bear with me for a moment Are you on page 19 or page 20 of the regional director's decision? We have both hands up I'm looking at 19 and 20 And the RD's decision is also at Is it better to give you the joint appendix reference? Sure 622 and 623 Thank you, Your Honor Yeah So if I could continue Each of the points made is while they do work on different machines once they are assigned to a department they all share initial hiring criteria That's true, but that was three years before the instant petition But then go on They say while maintenance employees work a different schedule they still provide coverage around the clock  when production employees are not working But what I'd like you to notice is there's no comparison of the maintenance employees shop to shop So using schedule as an example The schedule is different from shop to shop She notes that there's no interchange of maintenance employees in the three shops And that's an important factual indicia of community of interest What's more important here is there is no acknowledgement of the very significant evidence of the differences amongst the maintenance employees shop to shop And if I could just summarize a few and they're essentially uncontroverted is the physical location of each shop Separate, separated by walls Separate supervision There's no overall maintenance department There's no common supervision Because the technology and the equipment in each shop is different The requirements to work in each shop is different The protective where employees are required in the shops is different But you would agree and your client has already conceded that if there were a plant-wide bargaining unit of all employees across all shops that would be an appropriate bargaining unit Your Honor, we would because that would promote industrial stability and is consistent with the prior practice of these parties There was an election in 2014 There's an internal policy where the company engages with the union on behalf of all employees and if there was parity of reasoning if all the things that make it common between the separate shops are applicable then the maintenance employees in each of those shops share all those things in common with the production employees in those shops and it would therefore follow that an overall production and maintenance unit would be appropriate There is a problem here though, Your Honor because the union is unwilling to go to an election in a production and maintenance unit or an overall unit Well, it went to one There was such an election earlier In 2014, there was a stipulated election, Your Honor and the union was defeated in that election I'm trying to understand how you believe that the law requires us to determine when there's an appropriate bargaining unit I think your contention is that if there were a body weld unit that was of production and maintenance employees that would be an appropriate unit Or are you not conceding that? No, an argument could be made using body weld as an example that just a maintenance grouping within that unit might be appropriate but a more appropriate unit would be a unit of just the body weld shop because it has all the community of interest factors and features that the board heretofore has said is important in determining whether employees have a community of interest Even though there's no interchange at all between the body weld production employees and the maintenance employees? Well, that's a fact And if that's an important consideration then that consideration should follow to the overall point being made here You say if, is it or not an important consideration? It's a very important consideration I thought you said if, okay No, and it's a very important consideration and using that as our point of departure there is no interchange between body weld and paint and assembly But that happens for your plant-wide unit as well but you said it's fine I'm sorry, I said it, Your Honor That happens for your plant You said the plant-wide unit is fine and they don't have the interchange and you have two more units in which there aren't even any maintenance employees at all That was the logistics and quality control So I don't understand how that can be a barrier Those shop lines can be a barrier here to a plant-wide unit but are not a barrier to the plant-wide unit as long as it's both production and maintenance What we're contending is that an overall unit will promote industrial stability and fulfill in an efficient way the requirements of collective bargaining but at this first branch of specialty Distinctive group, yes Community of interest, no No community of interest There's an absence of interchange absence of integration absence of common supervision and that's not an appropriate unit Well, you focused on the one paragraph of the regional director's decision but there's another paragraph a concluding paragraph Doesn't she make a comparison there? That goes to the second branch of specialty whether the excluded employees share an overwhelming community of interest with the included employees Well, she's talking about readily identifiable She says share a unique function, etc. Share a community of interest under the board's traditional criteria and then she lists them And I agree, she doesn't compare shop one, shop two, shop three She says this is true of all of the maintenance employees in these three shops Recognizing that the analytical requirement is to look at the petition for group of employees Right And that's the comparison that needs to be drawn And analytically, that is a different issue than whether excluded employees should be included in the unit Your honors, I think if there are no further questions I'll reserve my 30 seconds for rebuttal We'll give you some time All right, thank you Counsel for Respondent Good morning and may it please the court Joel Heller for the National Labor Relations Board The board's finding that a unit of maintenance employees at Volkswagen's Chattanooga, Tennessee plant was appropriate involved the application of a standard that this court has upheld to a familiar set of facts Substantial evidence supports the board's finding that the maintenance employees share similar traits and bargaining interests that distinguish them from the excluded production employees Now what about the fact that there's been that there is no interchange among the maintenance employees in the different shops And it appears that when new maintenance employees have been hired in they've all been kind of promoted up from either production employees or from through this apprenticeship program But it's not like, you know there's ever been a maintenance employee from body weld that's gone over to paint or vice versa So I'll address the second part first And that is, so yes Since about 2013 or 2014 all maintenance employees have to go through a three-year apprenticeship program before they're hired as a maintenance employee That's not a requirement of the production employees So they have that initial three-year shared training, shared skills shared hiring criteria before they go in regardless of what shop they go to There is no interchange as was discussed earlier between the production and maintenance employees And the fact that there's also no interchange between the maintenance or there's no evidence of interchange between the maintenance employees Well that did not that was also the case in the Blue Man Vegas case There was no interchange between the various departments that were within a unit that this court found to be appropriate And it's a possibility that maintenance employees can transfer from shop to shop But there's not I don't believe evidence that that has occurred The other common factors that unite these maintenance employees and have them a community of interest They are shared as we talked about skills and training There's a shared function where they all repair machinery both on an as-needed basis and scheduled preventive maintenance And those are factors that are pointed out in the board's order On JA-685 we were just discussing the regional director's opinion but there's also the board's order And they say they discuss shared skills qualifications training Those are things that are shared within the unit of maintenance employees All maintenance employees also have the same wage structure And it is significantly higher than that given to the production employees It looks like it was sort of almost locked in at $7 or $7.50 It's a $7 differential at each step At each step So you sort of got locked in wage differential there Yes And including Sorry No, go ahead Including as the regional director pointed out the highest wage rate for a production employee which takes 7 years to meet is the same as the starting rate for a maintenance employee 10 to 1 what they receive But you've got a locked in differential there Yes So if if you have a unit that consists of maintenance employees and the union comes in and negotiates for their wages to be increased kind of an important thing for unions to do Isn't that don't we have sort of a tail wagon dog problem here because that's either going to necessarily haul up the weights of production employees if they want to keep that same lock step differential which they may want for all kinds of employment management or business philosophy reasons And so you're going to have the maintenance employees essentially negotiating the wages of production employees Or you're going to increase you're going to break up that linkage that the employer has put in place and and cause problems in that way So isn't when you have sort of same benefits and lock step wages to really really important matters for collective bargaining isn't there a problem with having only half of the story in the bargaining unit? Well so two responses to that One just as a factual matter it's we don't know whether they would continue to have that $7 differential It's possible that Volkswagen might not care They might negotiate separately with the maintenance unit and come up with some new wage rate that doesn't affect the production employees But secondly So that would change the way they organize their wage system thus far Yes But the second point is that the fact that there are some other employees who might be impacted by bargaining between the maintenance unit and Volkswagen follows from the idea that this court has recognized that there is more than one possible appropriate unit within a given workforce which means that it's possible as the court discussed in Blue Man Vegas that there are more than one groupings that might share a community of interest And so bargaining between a smaller group might impact the other employees who are not included because they might share a community of interest with the included employees But that doesn't That doesn't mean that the smaller unit is not appropriate because of that idea that more than one unit can be appropriate So it's possible that production and maintenance employees at the Volkswagen plant that could be an appropriate unit But that doesn't mean that the smaller maintenance only unit is only I'm asking a different question It's based on employer organization which the board has recognized as a very important consideration And that is in this scenario in this situation where you've got this lockstep system in place And I can imagine all kinds of reasons a business might want that And so the end result of simply organizing the smallest portion of that to, you know you've got sort of a very small percent number of maintenance employees versus a large number of production employees And we're going to negotiate their wages And we're going to force the employer to choose between either marching those production employees' wages right up behind them if it were to abandon that which is apparently a feature of how they've organized their business And so you've got this small group of maintenance employees And you're using them to essentially force employment decisions Not that they could have an impact You're going to force an employment decision one way or the other involving production wages They're going to have to make a decision one way or the other But I think that is a minor premise that follows from the major premise that there could be those two groups, production maintenance and maintenance only, both could be an appropriate unit That is, they both could have community interest Well, it only follows if I agree that the smaller unit is appropriate I'm asking the  of whether given that type of linkage and given the, as of now, identity and benefits between these two groups, whether recognizing a small group as a unit could be an appropriate unit knowing that it's going to pull everything along with it, pull a very large group along with it or force the employer to change its entire system Isn't that something that the board should grapple with in deciding whether it's a proper unit There are certainly many factors that  in these unit determinations Where did the board grapple with that lockstep, the impact of lockstep wages and identical benefits The, again Identical benefits I think it's the idea that it wouldn't it's not fatal to finding a community of interest within the maintenance only unit That bargaining between the employer and the maintenance only unit could or even would have an impact It has to have Right If Volkswagen decides to maintain that They inevitably will have They're going to be forced with either raising production wages to keep their lockstep There's no other option Okay, then the fact that it would impact those employees who are excluded from the unit It's not fatal to the finding that the smaller unit is appropriate Do you have a case where there's been an inevitable impact a certain impact on other employees Not that there always could be But that it's in the very design of the workplace and in the design of the business that one has to follow from the other There are many ways in which There are many When we talk about the factor of whether the unit tracks a line that the employer has drawn That is not There are many lines that an employer draws in its workplace It is not limited to operational or administrative lines like a departmental structure It also includes for example lines based on job classification Volkswagen decided to classify production and maintenance or as it also calls them team members and skilled team members separately It advertises for them separately It tracks them separately in internal documents and of course it treats them separately for all the terms and conditions of employment that we've been discussing like function, skills, wages aspects of their scheduling Sorry, can I just get back to my question Do you have a case where it's been held that it's a proper unit to have a small group of employees when you have these locked in employees that will force the employee who will have no choice but to make a significant organizational decision with respect to others There are cases in which a set wage differential between two groups has been a factor in supporting the finding of the community of interest The FedEx Freight case, there were several of them I believe the one where it is noted was in the third circuit version of the FedEx case There was a wage differential between the included and excluded employees and the board found that with the court's approval to be a factor in favor of community of interest And it was a lockstep wage differential? I believe it was a set wage differential It was a smaller one but it was It was a set differential It's also not unprecedented for more than one employees from more than one department to be included within the same unit That was the case in Blue Man Vegas where there were employees from six different departments who were in the same unit There's also a line of cases in which the board has found maintenance only units to be appropriate For instance from Nestle's Capri Sun all the times when there is highly skilled highly compensated maintenance employees who do not interchange with production employees those units were found appropriate even though in those cases the maintenance employees were split into groups and assigned to different parts of the plant that often correlated with different production areas so that they were working on different types of machines and that did not preclude a finding of community of interest I see that my time is up Thank you Council for interveners May it please the court Matt Ginsberg on behalf of the union local 42 just to respond to a few of the questions already raised first Judge Millett I just don't think it's an accurate representation of the record to say that it's a lost step  to have the employment and the employer bargain to have it fluctuate slightly differently but there's nothing to say that if it's important to the employer that that's something they might fight very hard for and bargain so I don't think it's accurate to state that the employer has never argued before the board or before this court that the wage differential supports its claim that the production and maintenance employees should be put together. In fact they've acknowledged that the wage differential is so great that it supports the difference and as I understood counsel to respond to judge Loken's question he actually accepted that there's enough of a differential that a maintenance unit in one of the shops I believe was the body weld shop would be appropriate. Again I would just say you know the board has a long line precedent I would say it's almost a categorical rule that when you have maintenance employees in a production facility like this one who are so much more highly skilled remember they're referred to as skilled team members by the employer itself and so much more highly paid and don't interchange at all with production employees there's close to a categorical rule that that unit is appropriate. The board cited the most recent of those cases in its decision denying review here and as we state in our brief at page 20 through 21 the whole line of cases going back to the 1961 case American cyanamide that those cases support a separate unit here even though it's smaller than the whole shop. The board has found that there's a strong enough community of interest in these sorts of cases. Do the board have to find something that knit these different people from these different shops together somehow? So I would say that there is a light burden for the board to find that maintenance employees of this sort who all share the same job classification and job title who share the same pay scale as we've already discussed and who are required to have the same sort of highly technical training to be appropriate within the unit. I mean the harder case I believe would be if the union was petitioning for just a group of maintenance employees in one plant but here the union is seeking a unit that covers the whole plant and all of the over hundred maintenance employees in the entire plant. Moreover, the employer did argue this obviously before the regional meeting that the issue salespeople were hired off the street with no prior experience necessary whereas here the employees have a very  almost a craft level of skill necessary to be hired into these skilled team leader positions. And furthermore the board found that the employees have   experience necessary to be hired into these groups. We don't disagree with that. The record does not reflect any movement but as we've cited in the brief the employer's own employee handbook states that only skilled team members may bid for other skilled team member positions across the plant. So they have a provision to allow that. So do production employees have to go through any kind of training program at that college or anything or do some of them get hired without going through training programs? The record reflects and the regional director found this explicitly that they're essentially hired off the street and they're given a very short amount of orientation, some agility training and then they're put on the job. The witnesses here who were skilled team members had very long experience. One was a journeyman electrician. The other was a pipe fitter in a production facility for many years. In contrast, the production employees who were skilled   very short amount of orientation. And again, the board's precedent has been very clear when you have these very large skill differentials in production employees between production and maintenance, a separate maintenance unit is appropriate. The union here is a COE, community organization engagement entity? It's a voluntary program. Do you owe any duties to production employees when you take on this status? What kind of duty do you owe to these individuals? We don't have any legal duties through our participation in that process. The process is explicitly not a bargaining process and states explicitly that if any group of employees wants to bargain with Volkswagen they have to go through the NLRB process, which is why the maintenance employees chose to do so here. So you're just like an outside advisory voice? They have created a voluntary process, the terms of that process are in the record, that permit ongoing conversation outside the confines of the National Labor Relations Act. I get that it's outside that. So when you speak are you just speaking for your members or are you only for those production or maintenance employees who are already members of the union? That's how the process works, but again it's not a bargaining process, it's a listening process. In order to bargain over things like wages or benefits we have to go through this process, which is why we chose to do so. If there are no further questions the union would ask that the boards were please be enforced. Thank you. All right, counsel for petitioner. Thank you your honors. First what this case boils down to is the NLRB's position that the NLRB is strong enough to overcome the employer's specific organizational structure which translates into significant differences amongst and between the maintenance employees. The second point I would make regarding judge questions, I call it the tail wagging the dog problem. We briefed that thoroughly and this kind of negotiations and this kind of unit is really inimical to stable collective bargaining. So the board said it's lock step, the union said it's not. I'm sorry your honors. The board said it's a lock step pay system and the union said it's not. Which is it? The pay differential between maintenance employees, is it locked step? The pay differential is different but the steps between it and the percentage differences between each steps are the same. I believe there are 11 steps that are equally shared by the production and maintenance employees with the variable being the dollar difference. But the production employees shall be $7 less at each level from the maintenance employees. In other words, there's nothing written down that sets the wages as a delta from the other, right? That's set forth in the team member guidebook. To the extent that Judge Williams just articulated? I'm sorry, your honor. I understand there's this guidebook but does the guidebook say that there shall always be this $7.50 differential? No, it doesn't say always, it just sets forth the process. And you can see that's grist for the mill of bargaining and creates this whole proxy war bargaining that could potentially take place. The final point I would make is that the board's reliance here on common judgment is  there        creates this proxy war bargaining that creates this proxy war bargaining that creates this proxy war bargaining that creates this proxy war bargaining         this proxy war bargaining that creates this proxy war bargaining that creates this proxy war bargain that creates this proxy war bargaining that creates   bargaining that creates this proxy war bargaining that creates this proxy war bargaining that creates this proxy war that creates this purpose is now placed that group in a position to bargain in ways that can affect 160 people affecting 2000 people. If I might just conclude by saying that in Bergdorf, this case is remarkably similar to Bergdorf. In Bergdorf, the board held that the common job title of shoe sales person in the common function of selling shoes was not sufficient to overcome the employer's  and organizational structure. And that's what we have here. In that regard, one question that is, the union says that the company's documents recognize that there could be transfers between shops by maintenance employees. Do you agree that that's something that's permissible? Page 97 of the team member guidebook. Is that in the JA? Sorry. No problem. I pulled it and had it bring it with me. It's in the JA 539. And there are a couple of things to note, Your Honor. I'll wait for you to get to that page. The first is it's a request, it's not a right. Second, there is no evidence whatsoever in this case that this, in fact, has occurred. Third, what the evidence has indicated very strongly, because of the different equipment and technology in each plant, the ability to freely move from one shop to another is very limited. It would require considerable  someone to move from one plant to the next. Thank you. We'll take the case under advisement. Thank you,
judges: Rogers, Millett, Wilkins